The question in this case is whether there is in the record sufficient evidence to permit a reasonable jury to find that Ms. Wallace was fired in retaliation for protected activity or because of her race. Let me assure you we are not going to claim that all the facts in this case are clear. To the contrary, a number of the important facts are very much in dispute and as I'll explain there's evidence on both sides. So if I might begin with the retaliation issue. There would be three possible issues in retaliation claim but here only one is in question. There's no adverse action here. Ms. Wallace was fired. There's not a dispute about whether there's protected activity. The question is whether there's sufficient evidence of a causal connection between the protected activity and the dismissal. So first of all, this case contains a kind of evidence that's not common and I think very persuasive or at least that a jury could find very persuasive and that is that there was a specific threat according to Ms. Wallace by Ms. Brown about 48 days before Ms. Wallace was fired. The words according to the plaintiff were I will get you for getting me in trouble with my boss. The defendant addresses a number of arguments in response to that. A jury might find them persuasive but we don't think they're sufficient to support summary judgment. And most of these are set out on page 16 of their brief. They object that Ms. Wallace's account is a mere allegation. A jury could regard it as probative because it is I will assist it. The reported threat from Ms. Brown was it, as I read it, she denied it. Is that right? I mean Ms. Brown denied it. Ms. Brown denied it and a jury might credit Ms. Brown's account and not believe Ms. Wallace's account but that's precisely the sort of argument I'm making. What was the other corroboration of it, i.e., comments by Ms. Wallace to someone about it or Ms. Brown, what else? I read some of what the testimony was but not quite. There's not corroborating evidence actually on either side and the defendant could rely on that at trial. There's not a requirement under Title VII for corroborating witness. There is a requirement like that in the treason clause of the Constitution but a single eyewitness account is sufficient to establish an issue like this, at least to get to a jury. And the supervisor played a role in the termination. That's not in dispute, right? The supervisor, whether it was because of the attendance issue or because of the retaliation, as you claim, this is not a case where the supervisor is not really a decision maker or didn't provide necessary information that led to the firing, right? That's our contention. This is a bit complicated. I don't want to give you a misleading answer to that. Ms. Brown, in her deposition, denied having had a role in the dismissal decision itself. Seton, I understand, does not agree with that. Ms. Rojo disagreed with Ms. Brown's account. So there's actually conflicting evidence on that. Ms. Rojo disagrees with the employee about whether she played a role in it? That's right. Okay. That's right. That's right. They just gave different accounts of who made the decision. She's the person who kept track of the missing, the lateness or whatever, isn't she? The supervisor? I don't think Rojo kept those records. I think her testimony is someone else actually kept the records. Rojo's account is that, with regard to the events in the second half of January, that Brown brought to her a series of problems that she thought existed about Wallace, gave Rojo a list of people to interview, and then made the decision. Right, but Brown brought the list. That's Rojo's account. It's not Brown's account. But, okay, so there's some evidence in the record to support that the person who's made the I'm going to get you statement was involved. Yes, yes, right, right. I just didn't want to suggest it was undisputed. That's all. No, I'm not saying it's undisputed. My question assumed that she was the supervisor in due course who would have reported these things, but that's not. There's clearly evidence of that, but it's just not Brown's account. I don't want to misstate the record. Okay. The defendant also objects that Wallace's account of what Brown said was self-serving. As we've explained in our reply brief, that's not a basis in which the court on summary judgment could disregard it. Again, the jury might find it persuasive, but. Aren't all affidavits self-serving? Yes, they are. I think the court made that point in U.S. versus Carter, but I'm just trying to cover all the issues here. The defendant objects that although even if Brown said I will get you for getting me, she didn't specifically mention firing her. We think a reasonable jury could infer that, you know, even if Brown didn't have a specific plan at the time she made that remark, that was what ultimately happened. Finally, the defendant objects that mere proximity in time between an event and a dismissal isn't sufficient. And we think that's not, again, they could make that argument at trial, but it's not sufficient to support summary judgment here for two reasons. First of all, this is not the only thing in the record. There's a lot of other evidence, and a series of events, a chain of circumstances in this Court's case law under Mooney between that event, which happens on or about December 10th, and the dismissal on January 27th. In addition, there is a line of cases in this Court saying a mere coincidence in time between protected activity and an adverse action isn't sufficient by itself. But this isn't merely protected activity, it's a threat. And we don't think those cases... So you're not relying only on the temporal proximity? No. You've got something else, the arguable threat. Yes, yes. And so with that, you are within the right time period for temporal proximity, but you're not just relying on that a lot? No, no, no. We have more to say. I'm not about to sit down. As I said, there's a chain of circumstances of events between that event on the 10th and the dismissal, which is set out in the record. The second major type of evidence we have in this case concerns pretext. Now, the number of justifications offered by various Seaton witnesses is substantial. And they have shifted over time. And I just want to walk through those. They're laid out in our brief, but I think the litany is important here. So the first one that's set forth, this is when the plaintiff is fired, and she's told this is like an outsource and that she's not needed anymore. That's the last we hear of that. There's no subsequent assertion of that justification. It just, that's the end of it. In the associate counseling, which is what happens on January 8th and what Rojo relies on, the specific thing that's identified as a violation of Seaton policy is what's called an uncompensated leave, that she had used up all her leave, her unscheduled leave days, and therefore had none left and on the 23rd of December was off and wasn't paid. Counsel, I'm really confused right now because I thought we'd been talking about pretext, the evidence of it, the whole time. When we were talking about temporal proximity, we were talking about the threat, you know, but you're saying you're taking this category out, that you're going to say the employer's reasons are not the real reasons? Is that what you, what is this argument addressing? Yes. The argument we're making here is there are a couple of reasons they are, they're still advancing, but there were six or seven other, five or six other reasons they've since abandoned. And under this Court's decisions, particularly the Burrell case, the fact that the employer is changing its account is probative of pretext. So without maybe belaboring it, I just note that there are four or five reasons that were advanced at some point in the past that they've simply abandoned. Within the company, or most companies, there's an HR, human resources. So at some point, the ministerial act of terminating Ms. Wallace presumably is done in HR, irrespective of who starts the chain, right? Yeah. So my question is, in HR, is there a document, a piece of paper, whatever, shows her termination that lists reason for termination? No. And there should have been. Under the normal policy of the employer, a record was supposed to be made in something called PeopleSoft of the reasons for the dismissal. That does not exist. Is there testimony as to why there was no entry? The testimony is that legal advised the ROHO not to write down a reason in PeopleSoft, which is not further explained in the record. So we have a number of reasons that were advanced that are not being advanced any further. And... But we get your point that there are a number of reasons. What's the takeaway you want us to have from that? Okay. The takeaway we want to have with regard to the reasons that have been abandoned is that they are changing their story. That the reasons they gave at the time, the reasons they gave to the EEOC, one of the reasons that ROHO gave at the first half of her deposition before she realized it wasn't true and came up with a second story, those have all been abandoned. And now they've got a few that are left. So if I might turn to the ones that are left. Two that are clearly... You don't have to defeat all the ones that are left to get to a jury, though. We do not. We do not. You just have to create some confusion that it was shifting, right, under our case law. That's right. I think the shifting reasons would be sufficient by itself. But the reasons that are left with regard to those as well, there's conflicting evidence. Are you not going to talk about your race discrimination claim? Because you're down to three minutes. You talk about whatever you want to talk about. Let me do precisely that, Your Honor. With regard to the race discrimination claim, the pretext evidence is essentially the same. Here there's a remark that we rely on, and it's a different remark. Actually, it's three remarks. They are that Ms. Wallace was too black in her mannerisms, that she had a homegirl personality, and there's also a remark that the black community is too ghetto. So the district court thought that this couldn't be relied on to defeat summary judgment because it was, in the words of the district court, a stray remark. We think that that's incorrect. The stray remark case law that this Court has particularly focused on has been in situations where the only evidence that the plaintiff relies on is a remark, and the claim is it's direct evidence and sufficient by itself. You're not raising a direct evidence claim. No, we're not raising a direct evidence claim. We're arguing a circumstantial evidence claim. That's correct. That's correct. And under this Court's decisions in Goudeau and in Reed, there's a different standard in a circumstantial evidence case. It's more flexible. But do you meet the prima facie test about whether she was treated less favorably than other similarly situated employees? Were the, because if she was in an introductory period, was she similarly situated to these other people? Is, that's, you have to, even before you, that's an issue in this case. Yes, we don't think in the circumstances of the case that that's something we need to do. Again, we have to focus in on what's the dispute about. So the first remaining justification is that the plaintiff had an excessive number of tardies. There's a conflict in the record about what the rule was. There's evidence supporting the plaintiff's account of a rule under which she hadn't violated the standard at all. There's, and there's direct evidence of that. There's, in her own monthly performance reviews, there are two statements that the standard is two tardies per pay period, which no one claims she violated. And in one entry, there's a remark that she has great T and A. We think the word, the jury could conclude T there is training. At that point, she had had six tardies in three months. That would violate the company's version of the rule, but it would not violate the rule that's set out in writing in her monthly performance reviews. In the course of the deposition, plaintiff's counsel, assuming that the rule was as they described it, asked her if she'd been criticized for her number of tardies, expecting she would have been. And she answered, no, she'd never been criticized for it. And again, I think that's because the rule, that's evidence that the rule they were applying is the two tardies per pay period rule, not the one, three tardies per quarter rule. So in a situation where there's just a disagreement about the rule, we don't think it's appropriate to be looking for a comparator. It doesn't really make sense. We have direct evidence. I don't think you have to have a comparator at all. Is that what you're saying? We don't think we do, given the specific nature of the claim. Let me give you another example of that. It's a different kind of problem. You've got a red light. Go ahead and finish the sentence. Yes. One of the arguments that they make is that, although I think counsel's abandoned it, is that she was fired for aggressive and abuse and mistreatment of her colleagues. She insists that's not true, and they know it's not true. So the comparator there would be an innocent white person. Obviously, they weren't firing innocent white people. So I don't think it's relevant when the claim is that the conduct didn't happen and they knew it, or when the claim is that what she did didn't violate their actual rights. So it's not that the conduct happened, but other people who did it weren't treated the same. It's that it didn't happen at all. It didn't happen at all. Okay. Or if it happened, it didn't violate rules. All right, Ms. Snapper, you've reserved your rebuttal time. I'll hear from Mr. Parker on behalf of Seton. May it please the Court. Tally Parker, counsel for the Appleby-Seton family of hospitals. Your Honors, the district court determined that Appellant Kenesha Wallace's race discrimination and retaliation claims couldn't escape summary judgment because she could not create a genuine issue of material fact on whether Seton's legitimate non-discriminatory reason was a pretext for discrimination. Did Brown, according to the company, participate in the decisions to discipline or terminate the plaintiff? She did. She did. Does Brown dispute that? You know, her testimony was unclear. There were portions of her testimony where, yes, she says, I didn't have any involvement in terminating her. There were other portions where she says, yes, I did. I was involved in the termination decision along with Elena Rojo in HR. Do you concede that the district court stated an incorrect standard about stray remarks in the opinion? No, I do not. Why doesn't the Reed v. Neopost standard apply, which says that they're not stray but they're some evidence of circumstantial? Well, to be fair, Your Honor, the district court actually, in discussing those comments in footnote two on page nine of its opinion, noted that the plaintiff does not offer these comments as direct evidence of discrimination. She instead offers them under a circumstantial case. The district court... And they're not called stray if they're circumstantial. That's the way the doctrine works. We don't have stray remarks except in the direct evidence. After the Supreme Court's decision in Reeves, I believe, we don't, we no longer call them stray remarks if it's not direct evidence. So did the district court err? No, the district court didn't, Your Honor, because the district court did not say these comments are not probative. The district court didn't just write the comments off altogether. The district court simply said these comments aren't sufficient enough evidence for there to be a finding of pretext. You're not taking the position that these types of comments are not racial, are you? We have not taken that position in this case, Your Honor. Now, we... Do you concede that these types of contacts have a racial element to them? They do, Your Honor. Okay. Whether they are discriminatory is a different question. But are they race-based? Absolutely. You don't think it's discriminatory to say to someone that they're too ghetto, as records, as someone said? I think... In a negative context, not in a, you know, positive context? I think, I certainly think that the statements are being made in negative context, Your Honor. And I think if a white person were to make the statements, absolutely they would be racist and discriminatory. Here, given that they were being made by an African-American person, I don't know that they would necessarily be discriminatory. But we're not advocating in this case that they weren't race-based. And we're not advocating in the case, Your Honor. We think the case can be decided even if we assume that the comments are discriminatory. You're not at all trying to imply or assert that you cannot have same-race, race discrimination, are you? I'm not, Your Honor. Okay. I'm not, Your Honor. So, Your Honor, the district... You all can affirm the district court's ruling upon finding a lack of pretext. But you can also affirm the district court's ruling, Your Honors, by finding that the plaintiff can't even establish a prima facie case of discrimination or retaliation. And that was something, Judge Elrod, that you just questioned opposing counsel on at the end of his argument. The fourth element of a prima facie case of discrimination is that the plaintiff has to show that they were either replaced or that they were treated differently from similarly situated individuals outside of the protected class under nearly identical circumstances. The evidence and the record is that the plaintiff was not replaced. That's undisputed. And they have not identified a single person who was similarly situated, meaning in their probationary period, and who had attendance issues and who had conflicts with co-workers and weren't terminated. On that basis alone, Your Honor, this court can affirm the grant of summary judgment on plaintiff's race discrimination claim. Wallace presented some evidence, though, that the attendance violations were not a fireable offense for probationary period, though, didn't she? Yes. And, Your Honor, we don't... The testimony in the case was that attendance standing alone would not have served as a basis to terminate Wallace. It was attendance, plus that she had these ongoing conflicts with her co-workers, plus the fact that she was in her introductory period. That's what the testimony was, Your Honor, as to the reasons for her termination. These issues with the co-workers, though, couldn't the fact find or believe that they were the co-workers' issues? What do you mean, Your Honor? I'm sorry. You had three things that you just listed. Well, the issues with the... There were issues with co-workers. We know that based on the emails that are in the evidentiary record. But that's not on her, is it? Well, one of the co-workers complained that she was creating a hostile work environment. Another one of the co-workers forwarded an email that the plaintiff had sent to her in which the plaintiff had told her, don't tell me, make sure in all capital letters I do anything. Another email that's in the record was from the plaintiff to her supervisor, Linda Brown, with a subject line of, may I vent, where she takes issue with Brown asking her a question about her work activities and thought she was suggesting that she wasn't really working and that she spoke to her in a negative manner. And then there's another email that came in, I think, six days before the plaintiff's termination on January 21 of 2016, where an employee had an encounter with her involving the way Wallace looked at her. So there were issues. And Wallace doesn't dispute that she didn't like these people. And Wallace doesn't dispute that these people didn't like her. She also, though, agrees that none of these people made any or did anything to her based on her race. She concedes that. She says the only person at Seton who did anything to her based on her race was her African-American supervisor, Linda Brown. That's it. But, Your Honor, she hasn't stated a prima facie case. She can't show that race was the sole reason why she, or that there are similarly situated individuals who were not terminated in their probationary. So the whole thing rests on this temporary, the thing I asked the question about, whether or not there are temporary status employees that she could have as comparators. Well, I don't think, I think that that certainly is important, Your Honor, but she hasn't even identified one person who had attendance issues and conflicts with a coworker, because it was both of those reasons why she was terminated. Well, there were other people within the group of employees she was with who had attendance issues. Right, but I'm saying there wasn't any, but, Your Honor, as I noted earlier, attendance standing alone wasn't the reason why she was terminated. It was attendance and her interactions with coworkers. There's no other comparison. Well, counsel's point is that there are a lot of different reasons that were put out there as to why conflicts, attendance, et cetera, and conflict, but that those reasons tended to shift depending on the circumstances. So what do you do with that? I mean, isn't there evidence somebody had 40 tardies or something and they weren't sanctioned or terminated, whether in an introductory period or not? The evidence on that actually wasn't conclusive that that person wasn't disciplined. It was that we couldn't find a write-up showing whether or not the person was actually disciplined. But even if we were to assume that person... What I'm not clear on, what is your articulation of construing the facts most favorable to the non-movement? That's the part I'm not clear on. Well, the non... What is the articulation of construing the facts most favorable to the non-movement here? The non-movement has identified four people who she claims are similarly situated and who weren't terminated. Three of those people are the people who she had conflicts with, Trevino, Flores, and McCaskill. There's no evidence that any of those people were in their introductory period when they had... So you rise or fall on the fact that she's within her introductory period, so even if her other evidence is probative, the fact that she's in an introductory period, that sort of defines the contours of this analysis, is that... It does for purposes of determining if individuals are similarly situated. And the district court, Your Honor, noted that. In its opinion, it cited Thomas versus Johnson on page 11 of its order. It's a 2015 case from this circuit citing a number of cases in which it held that comparators aren't similarly situated if they aren't also probationary employees like the plaintiff. Well, it seemed like it would have been simpler for... If that were the case, the hospital would just terminate her because she was in her introductory period, just like an at-will person, boom, you're out. Instead of all these shifting reasons as to why this, why that. If the answer was clearly, you're in the introductory period, we can fire you, we don't have to give you any reason, you're out, then it looks like the introductory reason would be it, but that's not the case. I asked the question purposely of what does the HR record show as the reason for her termination? If she's introductory and she should go, it would look like that would be just an entry in HR, but conspicuously absent is no entry. So, that's why I said, what is the articulation of construing the facts most favorable to the movement? You get my point, my question? No, I do, Your Honor. I'm not saying whether you're wrong on it, but I'm saying it's a little troubling to me. You wanted to find the universe of probationary or introductory employees. So, it seems that that's the case, one, two, three, boom, you're out, put an entry, end of story. But that doesn't seem to be the position the hospital took. It wasn't never that she's introductory, it was this, it was this, no, not that, it was this, it was that, and then there seems to be, at least in the little parts I read, some back and forth in terms of that. So, that goes well with some of these credibility issues. So, I'm trying to get to the point of, we're on summary judgment, right? You're right, Your Honor. With all due respect, I don't think there really are shifting reasons. There was a termination meeting, and in the termination meeting, she was told you're not a good cultural fit for Seton. She then says, okay, why am I not a good cultural fit, and at that, or she says, so you're not going to tell me if I'm being terminated? She goes, no, you are, it's like an outsource. And then she says, well, what's the reason? She says, Texas is an at-will state, we don't have to tell you why you're being terminated. That's what was said at the meeting. Ever since then, the story from Seton has been consistent. It was that there was attendance issues, conflicts with co-workers, and that she was in her introductory period. So, there really haven't been shifting reasons. Yes, from the EEOC position statement on, those reasons have been articulated with more clarity, but the reasons haven't shifted as we've moved along. From the EEOC position statement until now, they have remained exactly the same. But I do want to note, Your Honor, that it's really at the time of the termination, what were the decision-makers thinking and saying at the time of the termination? And is it different from that point? And it is different if they said, you're just at-will, go home. That's a different reason than you have all these problems. I will concede, Your Honor, that the reasons are different from what we've said from the EEOC on versus what was said in the position statement. And that's where you look at. Did you, at the time you made the decision, did you give a different reason than what you're now arguing? Right, Your Honor, but here, there's, so if we can move on from the prima facie case, if we then go to pretext, she still has to show that race motivated the decision. And all she has is this alleged conversation where Linda Brown made these comments, which again, Linda Brown denies having made any of those comments. But again, you've got to construe the fact as well. I know. But see, you don't seem to do that because you seem to say, well, she alleges it, but Brown disputes it. So if you're construing it in the light most favorable to the non-movement, I mean, don't you have to keep doing that? You do, Your Honor, you do. All right, keep going with that thought in mind. So other than those comments, which Brown made, there is no evidence of a discriminatory animus at all, because again, Brown is the only alleged discriminator, and those comments are it. We look at her record, we see that there was an attendance counseling given to her. We see that multiple coworkers are complaining about their interactions with her. We see that HR conducts an investigation. A seasoned HR professional with 30 years of experience had been employed by Seton for 10 years. And HR, in connection with the manager, determined that termination is appropriate. And there just isn't anything other than those comments, more than three months removed from the termination decision, suggesting that race in any way motivated the termination. Is there evidence in the record that the HR experienced person's investigation investigated the people that Ms. Brown said, go talk to these people? The evidence in the record is that the HR, is that Brown did say, go, you need to look into this. There are some coworker issues. And Brown said, these are the people who were involved with the issues with Ms. Wallace. And the HR professional did only go talk to those people. The HR professional didn't interview anyone other than the people who Brown had said, these are the people who I think you should talk to. But that's questionable. It's a fact issue. I don't think, with all due respect, to disagree, Your Honor, because there's no evidence that Brown controlled the investigation. There's no evidence that Brown told the HR professional, you can't talk to anyone else. The HR professional perhaps should have interviewed Ms. Wallace and others. But there's case law that we shouldn't second guess investigations conducted by HR professionals and sit as hyperhuman resources professionals. Might it have been done a little bit better? Not when they're instigated by the person who's the alleged discriminator who says I'm going to get rid of you. That's the problem here. But I have a question about Thomas, the Thomas case that you're relying upon about this introductory, in that case there was a specific regulation in the federal law of this border patrol person that said that there was a different firing criteria for permanent and probationary employees. In this case, is there any evidence in the record that there is a different, that's separate and apart from, that's actually established in any kind of written or posted fashion that probationary or introductory employees are treated differently? There is, Your Honor. There is. On this point. There is. There is. Ms. Rojo's, the HR professional, there's her declaration, which is in the record at 713 to 716. And Ms. Rojo in her declaration, she stated, and I quote, Seton's employees begin employment with an introductory period, during which time their performance and behavior are scrutinized to determine whether ongoing employment is appropriate. During Wallace's employment, the introductory period was six months in length. And during that time, employees are subject to a more stringent attendance policy and they also don't receive the benefit of Seton's progressive disciplinary process. So there is evidence in the record that probationary employees are treated differently. Because it's problematic that the two cases that Thelma cites don't, for the proposition, don't say the Jones case and the Lewis case did not involve probation or introductory. That was not the decision-make reasons for that, that the Thomas case cites. And so the Thomas stands on its own for this special regulation concept. But Thomas does cite other cases within it, Your Honor. And I'm citing the cases that Thomas cites, and they don't say that. Let me just ask you, why wouldn't the racial remarks be enough for the jury to find that there was racial animus here? And that was the reason for the termination. Because they were made more than three months before the termination. And then you have to look at all the intervening events, Your Honor. You have to look at the intervening events with the attendance write-up, the attendance file. Well, why wouldn't the jury have to sort that out? Because there's, in my view, there's just, there's enough evidence of events that occurred in between those comments being made and her being terminated that a reasonable jury couldn't conclude there was discrimination. Also, we have in this case, Your Honor, the same actor inference. The Fifth Circuit has recognized an inference. Again, it's not a rebuttable presumption that members of the same protected class won't discriminate against members of that class. But there is an inference that they won't. We have that here with both individuals being African American. We also have an inference against discrimination because. Those are good jury arguments, though, aren't they? I think they're good legal arguments, Your Honor. And there's also the issue that Brown is the one who hired Ms. Wallace. And there's also an inference that an individual wouldn't hire someone fully aware of their membership in a protected class to discriminate against them on the same basis. Where do you get that from? I'm sorry, Your Honor?  I have a number of cases to that point, Your Honor. The court can look at 123, F3rd, 315, and Note 3, the Fifth Circuit case. The quote is, whereas here, the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employees created. There's another case, Your Honor, at 2003, US App, Lexus 279. The operative language you read was whereas, quote, here, close quote, meaning in that case. I'm sorry, Your Honor? You said whereas here. I said the operative word is here, meaning the facts in that case, not as a general proposition. Well, the second case that I cited, Your Honor, there the quote is, an inference against a finding of pretext is present where the same actor is responsible for the decision to both hire and fire the complaining employee. That's ACU, Doofy University of Texas, it's 2003, US App, Lexus 27971. What about the, you didn't talk much about the retaliation claim. Yeah, I didn't really get a chance to get to that, Your Honor. I mean, you've got that threat there that's a real problem for you, isn't it? The threat is a bit of an issue because it does come, as counsel noted, 48 days before termination. But all of the intervening events that I talked about, the attendance issues, the employees complaining, the investigation, all of that occurred after the comment was made by Brown to her. And the standard on retaliation is but for. She's got to show but for her engaging in protected activity, complaining she wouldn't have been terminated. And here, even with that comment being made fairly close in time to the termination, we believe that she can't establish but for because of all of the events that happened between that comment and termination, Your Honor. Counsel, I'm confused about you saying three months is not temporarily proximate for the first claim. Well, it is. And we have four months we've said is still probative in the Evans case. No, I agree that it is close in time. Yes, I'm not arguing that it's not temporary. I'm just saying that the proximity alone isn't enough. And I don't think the proximity, even with that comment 48 days before, is enough because you have to look at everything that happened after that. The attendance issues and the employees complaining in the investigation. So I think when you look at all of the intervening events, it's difficult for the plaintiff to show that but for her complaining, she wouldn't have been terminated. I have five seconds left. Does the court have any further questions? I think we have your argument. Thank you, sir. Thank you, Your Honor. We're back to you, Mr. Snapper, if you have rebuttal. Thank you. May it please the court. Let me start out with an issue about a premium facial case. There's no claim here, I think, by the other side that a comparator is needed with regard to the retaliation case. And footnote, two of their briefs, they've got that standard as an 841 in the district court decision. So that, I think, takes care of that. Now, with regard to the race claim, to return to the conversation we were having about someone who claims to be innocent. Suppose they had fired her and the reason they gave was that she'd shot the CEO and her defense is, he's still alive. She would not have to find a white person who shot the CEO who wasn't fired. We would concede, for purposes of argument in a case like that, you would be fired for shooting a CEO, but they knew she didn't do it. And that's the claim here, that Brown knew she hadn't been abusive to McCaskill, Flores, and Trevino, but it was the other way around. Again, the jury could sort that out differently, but if the jury would have concluded that Brown knew she was innocent, it makes no sense to ask for a comparator on top of that. With regard to the question about the relevance of the introductory period issue, I need to go back to the point I was making earlier about there being three different versions of this story, because we're down to the third one. The account that was given to the EEOC weighed against the plaintiff that when they made the decision to fire her, she was still in the introductory period, and Rojo said that at the beginning of her deposition. Then after a break, lawyers came back and pointed out that wasn't true, so then she came up with a second story, and the second story was, I knew she wasn't in the introductory period, but legal told me I could consider her in the introductory period. Clearly not the same as the first story. That story then goes away in her declaration where she says, well, the thing that's relevant about the introductory period was that the events happened in the introductory period didn't matter when we made the decision. They're just not the same story. The declaration, it came later. The declaration came last. That's right. The declaration came last. That's the third version of the story. It's a kind of clean-up batter version of the story. It's an ever-improving story. So we don't think they can rely on a factor that we contend is pretextual and say we have to control for that. With regard to the same actor doctrine, it wasn't raised until now, and I think it wouldn't be appropriate to consider here, in part because it raises factual issues when you assert that doctrine. And there's something in the record that illustrates that when, according to Wallace's account, when she's having this conversation with Brown, and Brown is objecting that she's got a homegirl personality because she talks with her hands, and she says to her, you didn't talk like that when I hired you. That's the kind of problem you have about the same actor doctrine. Circumstances can change, and that was exactly what, according to Wallace, Brown said at the time. Finally, my opposing counsel pointed out that there were a number of things, it's really just one thing, or two things, that happened between the threat and the dismissal. So the first one is the associate counseling. And as we've explained in the briefs, the grommet of the counseling on its face, the only thing it identifies as a violation is the plaintiff was not at work on the 22nd and 23rd of December, and that, the counseling asserts, was not authorized. It is in this instance undisputed that the reason she wasn't there was that Seton ordered her to go home because they thought she was sick. They are not relying on that anymore as a justification. In so many words, Rojo says you would be punished for being out no matter what. I think a reasonable jury could infer that the policy was not to punish people for obeying orders to go home. The other thing that happened was this investigation, the evidence indicates, prompted by Brown with Brown providing the handpicked witness list, which leads Rojo to believe that Wallace has been abusing her co-workers. Again, our contention is Brown knows that isn't true and that the abuse was running the other way. A jury would have to sort that out. So the intervening events are as suspect as everything that comes before, and risk for a trial, but not a basis for summary judgment. Thank you very much. All right. Thank you, both counsel, for your briefing and argument and helping the court with the questions.